case number 25 5 4 6 5 USA vs. Mario Delaine argument not to exceed 15 minutes per side. Mr. Kahn, you may proceed. Good morning. May it please the court. Conrad Kahn on behalf of Mario Delaine. I'd like to reserve three minutes for rebuttal. You may. I'd like to focus today on the two Florida offenses that the district court used to justify the ACCA enhancement, the Florida felony battery, and the Florida aggravated assault. And I'd actually just actually like to start with the Florida felony battery, which is the second issue we briefed. Florida felony battery cannot qualify as an ACCA violent felony because it requires no awareness of harm. This is a critical issue. I read Borden to say that the mens rea has to modify the use of force against the person of another, not the fact that the force will cause harm. And if that's true, I would think that this statute meets that test because it requires an intentional touching or whatever. And then obviously I agree with you that it doesn't require the mens rea with respect to the harm element. But why isn't that enough under Borden's logic? So if I'm understanding your question, you're asking why... You're saying that the mens rea has to be tied to the harm, the fact that harm will arise. And I read Borden to say that the mens rea has to be tied that the use of force will be against the person of another. So you have to know or intend to use force against the person of another. And if you do that, you don't necessarily have to know that this use of force will cause harm. So Borden was very clear that it was adopting, it was interpreting the term use of force, at least the plurality, was interpreting the term use of force, limiting it by the phrase against the person of another. And within that they were saying, well this implies a mens rea. I'm with you there. I'm with you in the question. So mens rea is an adverb. Sure. Adverbs modify, you know. So what is it, modifying use of force or cause harm? And I viewed it as modifying use of force. It is modifying use of force. For the plurality. But they were interpreting that phrase to understand it to say, well reckless conduct does not count. So what then the question is, well what do they mean when they say reckless conduct doesn't count? And they incorporated the Model Penal Code's understanding of that mens rea. And they were very clear in the opinion when they said it's about an insufficient concern of a risk of injury. And that's right out of the opinion. Yeah, so I think I know exactly what portion of the opinion you're talking about. But there I just viewed the opinion as going through the different mens rea levels. So intent, knowing, reckless negligence. And using cause of harm as an example of the various ways these mens reas would apply. But then when it got later in the opinion into its like application, it was all about, this is the plurality again of course, it was all about intent or recklessness with respect to whether the use of force will be applied against another person. I think it's difficult because when you talk about the application of force, we're talking about the result. And I know that sometimes, like the throwing the plate against the wall, if you're reckless whether it'll hit a person, not whether it'll cause that person harm. That's the question. If you're throwing something or you could intend to throw it at the person, you could throw it at the person in such clear direction that you know it's going to hit them. Or you could throw it over here but you're reckless. That still would all go to the chances of force being used against another person versus the chances of that causing harm. I think it's very clear in context. They're not concerned with whether or not there's an awareness that you're going to engage in a certain type of physical movement. They're concerned with the awareness of the results of that physical movement. There's a quantum of force requirement, which was not addressed in Borden. And then there's the mens rea requirement, which is about the harm that will come from that use of force. So when they're talking about recklessness and knowledge, they're not talking about, well, are you being aware, sufficiently aware of what your volitional movement will do. They're concerned about the consequences of that volitional movement, the harm that will come from that volitional movement. That's how the Ninth Circuit has read it. That's how the Tenth Circuit has read it. And I think it's very clear from the opinion itself. And you can also contrast that with Justice Thomas's concurrence, which talks about intentional acts designed to cause harm. That's the key part. I think that maybe that language supports you for sure, but I didn't necessarily, that designed to cause harm part, but I didn't necessarily see that in the plurality. I think it is in the plurality. I think it's when they talk about the mens rea themselves, like you said, insufficient awareness of harm. But also when they talk about, they ultimately distill it about targeting or directing force. And recklessness doesn't have that because it has an insufficient awareness of what will happen from your conduct. So it's not targeted and directed in that way. So I think it's scattered throughout the opinion that they're adopting recklessness as the Model Penal Code defines it without any type of gloss on it. In fact, if there was some kind of gloss on the Model Penal Code's definition of recklessness, I would imagine they would have said that more clearly. I think they were adopting the Model Penal Code's definition of recklessness wholesale and contrasting that with knowledge, which also looks to awareness of harm. So I think it is about awareness of harm. And once you have that understanding under either the concurrence or the plurality, it's clear that Florida felony battery can't count. As relevant here... So if that's right, what's the difference between the plurality opinion and Justice Thomas's opinion? I might have read Justice Thomas's opinion to require knowledge that harm would result, but if that's right and you're saying that's what the plurality said too, then why isn't it a majority opinion? So I think Justice Thomas is a subset of the plurality. He's looking at intentional acts designed to cause harm. So I think he would want there to be an intent to harm, whereas the plurality I think is saying knowledge of harm would be sufficient too. That's the way I look at it. So there is a difference there. This Court does not need to resolve... You're saying Thomas is about design or desire to cause harm. Mm-hmm, yes. I don't think this Court seems to resolve what's the controlling opinion. Yeah, I was gonna of course ask you that question too. I think it's Justice Thomas's. I will be frank that no other court to address the Marx question has said it's Justice Thomas. I think there is error in the Marx analysis from these courts because they're looking at the majority opinion and saying, well, the plurality and saying, well, the use of force is being limited by the phrase against a person of another, and Justice Thomas isn't limiting it in any way. But I think to do the Marx analysis appropriately, you have to look at actually what the interpretations are, not just whether one is using limiting phrase and the other one isn't using a limiting phrase. Well, we have this opinion that I wrote called EMW in which we suggested that the way to do a Marx analysis in this circuit is which opinion will leave the most valid applications of the statute. And so in this case, that would be the plurality opinion. I am not familiar with that opinion. I'm sure it is. You know why? Because it was an abortion case and now it has a big red flag that says, you know, Dobbs. But the Marx analysis is still there. I guess my understanding of Marx was, or the way I was looking at it, was I was looking at the actual interpretations of it and saying, well, Justice Thomas says anything that, any intentional act designed to cause harm. Well, the pluralities test includes any intentional act designed harm, and then some. So just from a common sense, or maybe too simplistic, I just looked at it as, well, that was narrow. It fits within the plurality, and the plurality covers Justice Thomas and then some. It can cover acts that are practically certain to result in harm, even if they weren't intended or designed to cause harm. So that would be the and then some. So Florida felony battery, I think there's no dispute about the elements. It's an intentional, at least as relevant here, it's an intentional touching and then harm. The harm could be negligent, unintended, completely accidental. It's baked into the offense. It's what distinguishes felony battery from more aggravated versions of battery in Florida, like aggravated battery, which requires an intentional or knowing causation of harm. So once you accept that, I think this case is very easy if you accept our reading of Borden. What if the proposed reading of Borden that I had articulated was correct, that it only requires insurrea with respect to the use of force? Would it then, under Marx, be the controlling opinion? And the reason I say that, it seems like under that scenario, there would be eight justices who might find this statute a crime of violence. And it seems strange to say that the controlling vote is Justice Thomas's because of the back end intent to design harm. I'll be honest, I don't know the answer to that question. Marx gets very confusing. Sometimes there's two different opinions that just are like totally different from each other. And one isn't obviously or even necessarily a logical subset of another. So that's a really tough question. But I will say that the ninth and tenth circuits recently agreed with our interpretation of Borden, which I think is clear from the face of Borden. They didn't say, well, we're adopting the Molybdenum Code definition of recklessness with a special gloss on it. They just adopted it wholesale. And it's contrasting with Justice Thomas's also focused on harm. And recently, we explained this in our 28-J, the ninth circuit in Gomez just struck down a California assault statute. And that statute actually required knowledge of the facts that make harm likely. This statute doesn't even require that. This is an even easier case than the Nambonk decision in Gomez. So for those reasons, we think the Florida felony battery has to fall. I was planning to get to the Florida aggravated assault statute. I see I have less than a minute. I would just quickly say with respect to that, that three points, that categorical approach is a historical inquiry, not a statutory interpretation exercise. We know that from Supreme Court cases like Brown and McNeil. The cases in the Florida 5th DCA at the time with this conviction in 2012 were clear that recklessness or culpable negligence can qualify for aggravated assault. And that shows a realistic probability, both in the facts of those cases, but also the legal principles clearly established by those cases that a reckless conduct could qualify as aggravated assault. So both these Florida's offenses fail under Borden. They don't have the necessary mens rea. Without that mens rea, they cannot fit within the elements clause. Therefore, we respectfully ask that you vacate the ACCA sentence and remand for resentencing. All right. Thank you. We'll hear from the government. Good morning. May it please the court. My name is Luke McLaurin and I'm here on behalf of the United States. Mr. Delane's armed career criminal classification and sentence should be affirmed because his prior convictions for Florida aggravated assault, Florida felony battery, and Ohio domestic violence qualify as violent felonies under the Armed Career Criminal Act's use of force clause. I'm happy to answer questions about any three of those offenses, but I'd like to focus my time primarily on the two Florida offenses today. And since most of the discussion previously focused on this interpretation of Borden, I'd just like to start right there. Starting there, you seem to say that the difference between Justice Thomas's opinion and the plurality didn't matter, but I have a hard time seeing how you could win under Justice Thomas's opinion if we just take it at face value, because he did have the back end designed to cause harm. So an intentional use of force designed to cause harm, and I don't think this statute requires any intent with respect to the harm. Well, I think Justice Thomas's opinion has to be read in light of his dissenting opinion in Voisin, because that's what he specifically references. He's saying, my view is the view I expressed in Voisin. In that opinion, he is quite clear that it's not just about designed to cause harm. I think he used that as a shorthand, and it was an inexact shorthand in his opinion. I think the point of his opinion in Borden was to emphasize, I'm not resting on the against language, I'm resting on the use language. And where you get his full analysis of the use language is his dissent in Voisin. Why does that help you here? What does it say that would suggest you don't need intent with respect to harm? Because he says that there he doesn't talk about harm, he talks about that it's enough to have both intentional and knowing action. That it's enough if you know, like if you're aware of the consequences. And consequences there have to be read in light of what are we applying this mens rea to? Are we applying it to the use of force, or are we applying it to the harm? And when we apply it to the use of force, the consequence there is the fact that you're actually applying force to somebody else. So I think both Justice Thomas and the plurality opinion, I think reached the same conclusion. That the only difference really between them is the route they get there. Whether they rely on the use part of the language or the against another. But he was quoting Voisin when he said that designed to cause harm. Why did he put that in Voisin if it was really about just designed to use force? Designed to have force be used on another? I mean I can't I can't explain why he decided to quote that one selective portion. But I think it was clear when you read his opinion that what he's saying is, look at what I said in Voisin. That's the basis why I'm providing this vote. And I'm not going to provide the full analysis here because I've already done that in Voisin. And so I think we do have to read the full Voisin dissent to understand his views. And also I think it's notable that when you look at Delegati, which was written by Thomas, and you look at that footnote, he specifically references knowing or intentional. And if we're going to read like just the portion of Justice Thomas's concurrence in Borden, that would take out knowing because the only reference is intentional. But clearly he includes knowing and he thinks that that's part of the holding because he says that in Delegati. So I think that shows us that we really have to go back in Voisin. I think the bottom line conclusion we get out of Borden is, and I think all of the justice and majority agree on this, is that recklessness is not enough. Knowledge and purpose are enough. And between that, we're not saying anything. A key point, yeah, I agree with all that. The key point is about what they modify. So what do you do with the examples that your friend on the other side suggested about the model penal code? It is strange that they were, well maybe it was just examples, but they do say knowledge of harm in the one section of the opinion and they talk about knowledge of harm versus reckless action with the high likelihood of harm versus negligence with the chance of harm. There I think that that portion of the opinion is best read as simply illustrating the differences between the different kinds of mens rea as they might apply to when you're talking about an act where you're looking at causation of harm as the consequence. But there I think it's important to look at what are they saying is, they're just using that as examples, but if you actually look at their definition of knowingly in that section, what they say is aware that the result is practically certain to follow from misconduct. What result? Well that depends on what the mens rea is modifying. And then if you look at their examples that they actually give in the opinion when they talk about use of force, when they talk about the driver examples, the language that is used does not reference the causation of harm or the awareness of the harm. What it references is the awareness of the use of force. And that's exactly how the plurality talks about it. Specifically they say, say a getaway driver sees a pedestrian in his path but plows ahead anyway, knowing the car will run him over. They're talking about the knowledge that his action is going to result in force being applied, not that his action is going to result in injury to the person. And then they can... So in that example, they're likely the same? In that example, they are likely the same. But I think we know... The reason we know that they care about the consciousness of the deploying of force is because that's what they go to right after those examples when they talk about purpose and knowledge. And they say, in both of these cases, what has happened? The person has consciously deployed the full force of the auto against another. That's what they're concerned about, is the conscious deployment of force, not consciously causing harm. And that makes sense as a factual matter. The use of force clause is a use of force clause. It's not a causation of harm clause. It's about using force against the person of another. Nothing in that language focuses on an intent to cause harm. Well, the problem with this case is that it combines what otherwise would be not physical force, because battery, I think the court in Curtis Johnson suggested that might not suffice because it could be any intentional touching. It combines that, but then it has this extra element that always forces being done. And it's not clear to me how these two match up. So the Easterbrook hypothetical I thought was a good one in the Seventh Circuit case that you cited. Could this statute be satisfied if somebody started tickling somebody else and the person fell backwards and hit their head and injured themselves? That would suggest there is an arm there, but would you really call that the use of physical force? It would satisfy the intent requirement, but it's not clear to me how that hypo from his case should play out. What's your response? I don't think that hypo would be able to be prosecuted under this statute because of the great bodily harm permanent expigurement. The hypo is that there was great bodily harm, right? They fall backwards into a vat of hot oil. Exactly. But I think you have to use force that itself is capable of causing bodily harm. It doesn't depend on using... Causation is somehow eliminated in that hypo? Well, I think there's too extended a chain of causation, which is exactly why in the hypo when Easterbrook raised it, he then looked and said, look, this doesn't happen. You don't apply this Indiana statute that way. He did the thing about you have to look and find examples in the case law that might support it. Does that mean we have to look at Tennessee Battery and see if anything like that was prosecuted? I think if there was such an example, that might cut against my position, but there is not an example. That's not how Florida has applied this statute. And so I think that, again, you look at the Florida case law, it's very clear that it has to have a pretty high level of force, and that it's a much higher level of force that's required than simple battery. And the Florida case law is very clear on that point. This is not simple battery, which was at issue in Johnson. And this is a much higher level of force, and I think the 11th Circuit decision available on, which we cited, goes through very exhaustively and explains why this is a much higher level of force, goes through all the relevant Florida cases on that point. And I think it's very persuasive on that point. So I think this statute fits squarely within the understanding. It requires an intentional, or excuse me, a knowing application of force. You didn't take a position on Mark's. And so suppose we disagree with you on Justice Thomas, and so we really see a distinction between the two. Does the government have a position on what is the narrowest? Our position is that the plurality is the narrower opinion. And so if the court were to say that it has to look at one as providing controlling reasoning, it would be the plurality opinion. That said, we don't think that it really matters, because either the bottom line conclusion of both opinions is the same, and the bottom line holding is the same. They just reach the holding by different routes. One looks at the term abuse, one looks at against a person of another. And I don't think that distinction is going to matter for purposes of answering this question. Because this question is really about, what does the mens rea apply to? Does it apply to the actual use of force, which would make sense, given the text of the clause? Or does it apply to intent to harm, something that is not included in the use of force clause at all? And I don't think you should apply it to something that does not have a textual grounding in the statute. Unless there are other questions about the felony battery, I'll turn to the aggravated assault. So our position on the aggravated assault is pretty straightforward. You look at the language of the statute itself, and you look at the Florida case law. Now, there's been some discussion of Summers, and I think it's important to actually read the Summers opinion for what it says it's doing. Summers was asked to look at, it rose in the context of a specific case. A defendant who had committed a Florida aggravated assault in 1997. And Summers said it was looking at the 1997 version of the statute. So to read Summers as saying, well, this is what the law is now, is I think just an incorrect reading of Summers. As Judge Ripple pointed out in his dissent in the Seventh Circuit Anderson case. That you have to read Summers as saying, or answering the question that was presented to us, what did the statute mean in 1997? This is what it meant in 1997. Now, the statute hadn't changed, it had been the same statute from 1975 to 2021. But the court was saying, this is what the statute means. And we also know that from the model jury instructions in the state of Florida that do not list culpable negligence as an option. They list intentionally as the mens rea. And we also know that from a whole series of Florida district court opinions that had interpreted this statute as requiring intentional conduct, consistent with Summers. And that was from every single Florida district court of appeals. One case that my friend on the other side conspicuously ignores, repeatedly, is the Denard case. That was from the Fifth District Court of Appeals. A case that was decided months before Mr. Delane committed his aggravated assault in this case. That case reversed a conviction for aggravated assault because there was insufficient evidence of intent. If there is not a clear example that the statute actually requires intentional conduct, I don't know what else we can point you to. Why do you think the Seventh Circuit reached a different result? Well, as we explained in our brief, we think that the Seventh Circuit looked incorrectly to Florida case law about when you apply rules retroactively on collateral review. And that is a different kind of analysis than what is at issue here. And I think that the problem is, they said, Florida has this weird approach to statutory interpretation. It doesn't. I think if you actually look at the Seventh Circuit opinion, they start off by saying, hey, under the normal rules, when a state Supreme Court says what the law is, we presume that that's what the statute has always meant. But Florida has this weird rule. And they said that because they were misinterpreting Florida law. They were looking at rules about retroactivity on collateral review. And there are different concerns that come into play there because there is a finality concern that states and the public have an interest in just having finality of judgments. So there are different rules that systems have adopted to assess when we're going to apply things on collateral review that are different than when we apply things on direct review. And so I think where the Seventh Circuit went wrong is it just looked at the wrong kind of rules. It took those rules out of context. And if you look, all the cases it cites are retroactivity on collateral review cases from Florida. So it just looked at the wrong part of Florida law. And Florida has adopted a different balance when it comes to retroactivity on collateral review than the federal courts have. Although there are some Florida cases recently that suggest that maybe their balances should be the same. We don't need to get into that here. I'm very curious about the stare decisis point in the Ohio one. It's not obvious to me what the correct rule is on the stare decisis effects of a prior judgment. So imagine in a prior case the debate over whether something was a crime of violence was about mens rea. And it was about whether there was reckless. And the court says, this is a crime of violence because it requires a knowing mens rea or whatever. And then imagine in case two a new defendant says, oh yeah, we're not disputing the mens rea. But we are disputing whether Curtis Johnson's level of force is met. It seems to me under your position stare decisis would reject that argument. Because you say once one case says it's a crime of violence, that essentially rejects every conceivable argument for why it might not be. We would say that. Doesn't that seem problematic? I have a saying called accidental law. That's accidental law right there. Because it's either it's not stare decisis or in case A the panel has a duty to consider every conceivable argument for why it's not a crime of violence. Even those arguments that aren't in the briefing. And that strikes me as somewhat impalatable too. I think because of the nature of the categorical approach, and I see my time has elapsed, can I answer your question? Because of the nature of the categorical approach, generally when a court is assessing whether something meets, has as an element, these things, to say that it fits that definition means that it fits all parts of that definition. Do you think that the first case, whenever we take a crime of violence case, we have a duty to consider every conceivable argument for why it's not a crime of violence? So like in that first case, we should have also considered use of force? Well, I think the court has an obligation to consider whether it meets all the elements that are required by the use of force clause. Even if only some of them are challenged. I mean, that's the problem. That's what's tricky. It comes up a lot. Our position is that that is what the categorical approach does require this court to do. Because you can't say that something meets the definition of a violent felony or meets the definition of generic burglary or meets the use of force clause unless you actually consider whether it does meet the use of force clause and all the elements of the use of force clause. So we would consider a holding that it does, unless the court has some language of saying, hey, we're only focusing on this thing and limits its opinion in that way, I would say that you should treat a holding as categorical. Now with regard to this specific case, I don't think this issue is raised here because Gatson did consider this very argument. I mean, I think that's the problem with his argument is that Gatson actually considered the exact argument he is raising and just disagreed with it. So I don't think the court has to deal with that potentially tricky question, although I admit it can be a very tricky question. I don't think it has to deal with it here because here we have a case that directly considered this very issue and it decided it. It didn't decide it the way the defendant would like, but Gatson is the one who already decided this issue and this court has to follow that holding. All right. Thank you. We'll hear a rebuttal. We'll have to get through in three minutes. So I'll start with the felony battery. My friend wants to say, well, Justice Thomas' concurrence in Borden is really what he said in Boisdain. Why do you say it this way? Well, I don't really know, but I think the safest way to read a concurrence is it says what it says, and we shouldn't be jumping to other opinions. Boisdain was about a different statute, not the ACCA. It was about a misdemeanor crime of domestic violence. He put a C to Boisdain because it was a similar conversation, but he said what he said in his concurrence. That's what he believes the use of force clause requires in the context of the Armed Career Criminal Act, an intentional act designed to cause harm. As far as, Judge Murphy, your question about the text itself and about whether it's actually about the use of the physical act of force as opposed to the harm, I think when you look at the word force itself in the ACCA and Curtis Johnson itself, they interpreted the word physical force by reference to harm. It's force capable of causing harm. So harm is embedded in the word force. So it's not unusual that harm is a requirement of the mens rea requirement also from Borden. And I said this during my initial presentation, it would be very odd for them to go through all these different model penal code definitions about knowledge, recklessness, purpose in relation to harm and talk about insufficient concern of harm, but then not say, but we're going to actually modify that a little bit with the elements clause. They just incorporated it because the elements clause is concerned with harm. Physical force, force capable of causing harm. So that is the proper understanding. It's about harm. And you see that in the plurality and you see that in Justice Thomas' concurrence. Jumping to the aggravated assault, my colleague wants you to look at Summers, which he says, well, I was interpreting the 1997 statute. That just raises the question, that issue here. Summers was a 2022 decision. Do we apply Rivers, which is just telling us what the statute always meant? Or are we saying, well, what is the categorical approach? The categorical approach isn't a statutory interpretation exercise. We're trying to figure out what the statute always meant. We're trying to say, what was this person convicted of and how was the law understood and applied at that time, even if there was later judicial or legislative changes to the law? We know that from Brown. We know that from McNeil. In Florida in 2012, a person could be convicted of aggravated assault based on reckless conduct or culpable negligence. You see that in Kelly. You see that in Lavallee. That's in the facts. That's in the law. He harps on the fact that the aggravated assault statute has the word intentional. The 5th DCA knew that. It said, proof of the intent element could be satisfied by recklessness or culpable negligence. The fact that intentional is in the statute and the jury instructions doesn't change the fact that the 5th DCA and the controlling precedent said that the intent element could be supplied by culpable negligence or recklessness. And as far as Anderson goes, and I see my time has expired, Anderson did talk about Rivers in the unique context of Florida's retroactivity doctrine. I don't think the court needs to go the same path as Anderson. My friend does not dispute every other court except for the 11th to address this categorical approach methodological question, has looked at the law as it was applied at the time of conviction. That's the consensus across the nation. Anderson, I think, just made the common sense observation that Florida itself wouldn't apply Summers to this conviction if it was on post-conviction review in Florida. So it would be odd if a federal court applied it on the categorical approach. But you don't have to apply Anderson's reasoning to get to the result. That's historical inquiry. And I see my time has expired, so I'll leave the Ohio battery. Thank you. Thank you both for really helpful briefing and arguments in this really challenging area of the law. We appreciate that kind of advocacy from both sides. Thank you.